BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE WILLIAM B. KOLENDER, SHERIFF, COUNTY OF SAN DIEGO, has requested an opinion on the following question:
Is a deputy sheriff of the County of San Diego, who is employed to perform duties exclusively or initially relating to custodial assignments, a "peace officer" while away from the county's detention facilities and appearing at community service events, participating as a member of the Sheriff's Honor Guard, or conducting recruitment background checks or internal affairs investigations?
 CONCLUSION
A deputy sheriff of the County of San Diego, who is employed to perform duties exclusively or initially relating to custodial assignments, is not a "peace officer" while away from the county's detention facilities and appearing at community service events, participating as a member of the Sheriff's Honor Guard, or conducting recruitment background checks or internal affairs investigations.
 ANALYSIS
In the County of San Diego, certain sheriff's deputies are employed to perform duties exclusively or initially relating to custodial assignments and are referred to as "corrections deputies." The question presented for analysis concerns whether these deputies are "peace officers" while away from the county's detention facilities and (1) marching in a parade at a department sanctioned community service event, (2) participating as a member of the Sheriff's Honor Guard at the funeral service of a peace officer killed in the line of duty, or (3) conducting a background investigation of a new recruit or an internal affairs investigation of a deputy's violation of the department's procedures. We conclude that these deputies are not "peace officers" while performing such duties.
Government Code section 26605 generally provides that "the sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it. . . ." The custodial personnel who carry out this function may be sheriff's deputies or "custodial officers." (Pen. Code, §§ 831, 831.5.)[1]
Here, we are concerned with sheriff's deputies performing custodial duties under the terms of section 830.1, subdivision (c), which provides:
 "Any deputy sheriff of a county of the first class, and any deputy sheriff of the Counties of Riverside and San Diego, who is employed to perform duties exclusively or initially relating to custodial assignments with responsibilities for maintaining the operations of county custodial facilities, including the custody, care, supervision, security, movement, and transportation of inmates, is a peace officer whose authority extends to any place in the state only while engaged in the performance of the duties of his or her respective employment and for the purpose of carrying out the primary function of employment relating to his or her custodial assignments, or when performing other law enforcement duties directed by his or her employing agency during a local state of emergency."
Accordingly, a corrections deputy in the County of San Diego who is not "engaged in the performance of the duties of his or her respective employment and for the purpose of carrying out the primary function of employment relating to his or her custodial assignments,"[2] would be without peace officer status during that time and therefore would be subject to certain statutory prohibitions such as those against carrying a concealed weapon (§§ 12025, 12027) and carrying a loaded firearm in a vehicle or public place (§ 12031). (See 80 Ops.Cal.Atty.Gen. 293, 296 (1997); 80 Ops.Cal.Atty.Gen. 100, 103-104 (1997).)
In analyzing the terms of section 830.1, subdivision (c), we may apply well- settled principles of statutory interpretation. "When construing a statute we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "`Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]' [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633.)
Under the restrictions of subdivision (c) of section 830.1, in order for peace officer powers to apply, it is not enough that the corrections deputy be "engaged in the performance of the duties of his or her respective employment." He or she must also be engaged in such duties "for the purpose of carrying out the primary function of employment relating to his or her custodial assignments." Thus, the fact that the activities in question may be within the job description for the position of corrections deputy or are performed at the direction of or with the consent of the sheriff is not dispositive of the issue presented. The activities must also be performed for the purpose of carrying out the primary function of employment relating to custodial assignments.
It is readily apparent that "custodial assignments" for purposes of section 830.1, subdivision (c), would be those tasks directly related to maintaining the confinement of inmates and detainees in detention facilities. Activities occurring away from a detention facility and not involving prisoners would fall outside the scope of "custodial assignments."
The specific terms of subdivision (c) of section 830.1
demonstrate the scope of the "custodial assignments" that serve the primary function of "maintaining the operations of county custodial facilities." These responsibilities include "the custody, care, supervision, security, movement, and transportation of inmates." Such statutory language is reflected in the County of San Diego's description of the corrections deputy position:
 "The purpose of this position is to maintain security and provide for the custody, control, safety and general welfare of detainees and inmates at a County of San Diego adult detention facility through the enforcement of all applicable laws, regulations and departmental policies. . . ."
The county's list of essential job functions for the position does not refer to community relations activities, miscellaneous public appearances, or the conduct of recruitment background checks or internal affairs investigations.
Given the express language of section 830.1, subdivision (c), and the county's own job duty statement for the corrections deputy position, we find that community relations and public appearance activities do not qualify as being "for the purpose of carrying out the primary function of employment relating to his or her custodial assignments." Such activities are qualitatively different from the type of custodial assignments described in the statute. Conducting recruitment background checks and internal affairs investigations present a somewhat closer question; however, such administrative activities may not reasonably be characterized as being part of "the primary function of employment relating to . . . custodial assignments."
Our construction of section 830.1, subdivision (c), is fully supported by the statute's legislative history. The language in question was added to section 830.1 in 1996 when the statute was amended. (Stats. 1996, ch. 950, § 1.) The Legislature was advised at the time that these officers would receive only part of the usual training given to peace officers and "would then be required to complete the remainder of the basic peace officer training prior to being reassigned to regular peace officer patrol duties." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 574 (1995-1996 Reg. Sess.) Aug. 8, 1996, p. 5.)[3] Hence, it is apparent that the Legislature's limitations placed upon the exercise of peace officer powers in section830.1, subdivision (c), were in recognition of the fact that these deputies would not be receiving full peace officer training until reassigned to other duties.
We conclude that a deputy sheriff of the County of San Diego, who is employed to perform duties exclusively or initially relating to custodial assignments, is not a "peace officer" while away from the county's detention facilities and appearing at community service events, participating as a member of the Sheriff's Honor Guard, or conducting recruitment background checks or internal affairs investigations.
 * * * * *
[1] All references hereafter to the Penal Code are by section number only.
[2] No suggestion is made that any of the activities in question relate to the "perform[ance] of other law enforcement duties directed by his or her employing agency during a local state of emergency." This clause of section 830.1, subdivision (c), is therefore not relevant to our analysis.
[3] "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citation.]" (Dyna-Med. Inc. v. Fair Employment Housing Com. (1987) 43 Cal.3d 1379, 1387.) "Committee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 646.)
This legislative history also explains the phrase "or initially relating to" in subdivision (c) of section 830.1 as referring to officers who would not be expected to perform custodial assignments on a permanent basis but rather would be expected to transfer into regular peace officer assignments after a period of, for example, five or six years.